UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

LEONORA RANGEL, individually and on
behalf of the Estate of Tony Martinez,

      Plaintiff,

v.                                                                                        No. 5:23-CV-128-H

WELLPATH, LLC, et al.,

      Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

This case stems from the suicide of Tony Martinez that occurred while he was a pretrial detainee in the Lubbock County Jail.  His mother, Leonora Rangel, brought suit individually and on behalf of Martinez's estate against Wellpath, LLC (the private medical provider at the jail), two Wellpath employees, and Lubbock County (the County).  She asserts claims under 42 U.S.C. § 1983 and the Americans with Disabilities Act (ADA).

Before the Court are two motions filed by the County seeking dismissal of all claims pursuant to Federal Rules of Civil Procedure 12(b)(1)[1] and 12(b)(6).  Dkt. Nos. 28; 29.  First, the Court denies the Rule 12(b)(1) motion to dismiss and stays the case for 21 days to allow for the substitution of a proper plaintiff.  If the plaintiff fails to substitute a proper plaintiff within 21 days, the estate's claims will be dismissed with prejudice.  Additionally, with respect to the County's Rule 12(b)(6) motion to dismiss, the Court dismisses all Section 1983 claims and the ADA claim for denial of medical and mental health care.  However, the Court finds that the plaintiff has adequately pled an ADA denial-of-medical-housing claim against the County and denies the motion with respect to this claim.

---

[1] The other defendants joined the Rule 12(b)(1) motion to dismiss.  Dkt. No. 30.

1.      **Factual and Procedural Background**[2]

A.      **Factual Background**[3]

On January 9, 2021, Tony Martinez was booked into the Lubbock County Jail.  Dkt.

No. 25 ¶ 25.  That day, he told "security staff [4] that he wanted to hurt himself and was

suicidal," and he "slamm[ed] his head repeatedly on the concrete floor."  *Id.* ¶ 26 (footnote

added).  He was then placed on suicide watch, moved to a violent cell,[5] issued a

suicide-prevention gown, and placed on 15-minute observations.  *Id.*  Martinez also reported

past suicide attempts.  *Id.* ¶ 27.  A screening was conducted and revealed that he had

"multiple documented mental health diagnos[e]s."  *Id.* ¶ 29.  Specifically, Martinez "had

---

[2] The factual allegations are taken from the plaintiff's first amended complaint (Dkt. No. 25), which the Court accepts as true when resolving a motion to dismiss.  *Villarreal v. Wells Fargo Bank, N.A.*, 814 F.3d 763, 766 (5th Cir. 2016).

[3] The factual allegations in the plaintiff's first amended complaint are identical to the factual allegations in her original complaint.  *Compare* Dkt. No. 1 ¶¶ 1–438, *with* Dkt. No. 25 ¶¶ 1–438.  Accordingly, the "Factual Background" section from the Court's prior order on the defendant's first motion to dismiss is restated in this Order.  *See* Dkt. No. 24 at 2–7.

[4] The Court takes the term "security staff" to refer to Lubbock County Jail staff.  *See* Dkt. No. 25 ¶¶ 418–22.

[5] Neither the complaint nor the briefing describes the "violent cells."  However, based on the context of the complaint and arguments, it appears that the violent cells did not contain any tie-off points or ligatures.  The plaintiff alleges that:

> [Martinez] was moved from the violent cell he had been in on suicide watch to cell 102 in pod 3A.  This cell had a shower with [a] shower head sticking out from the wall a few inches from the ceiling of the shower.  [Martinez] was provided a blanket that could easily be torn into strips.  On June 19, 2021, . . . [Martinez] killed himself.  [Martinez] tore the blanket into strips, tied them to the shower head, and hung himself.  The shower head was an obvious tie off point.  The blanket was an obvious ligature.

Dkt. No. 25 ¶¶ 410–16; *see also id.* ¶¶ 572–73.  Thus, the reasonable inference is that Martinez was moved from a violent cell without a tie-off point and ligature to a cell with a tie-off point and ligature, which the plaintiff alleges was the cause of his suicide.  *See id.* ¶¶ 553–55.  Comments by Wellpath and jail staff also indicate that violent cells were used "to ensure inmate safety" or keep watch on an inmate.  *See id.* ¶¶ 194, 203.

been diagnosed with schizoaffective disorder: depressive type, which presents the person with an increased risk of suicide." *Id.* ¶ 59. The County contracted with Wellpath, LLC, a private medical provider, to provide mental health care to inmates. *Id.* ¶ 10. Martinez was referred to Wellpath to receive mental health services in jail. *Id.* ¶ 28. On January 10, Martinez reported feeling hopeless and a sense of being a burden to others. *Id.* ¶ 30. Two days later, on January 12, Wellpath employee Kimm Hastey, the mental-health coordinator at the jail, conducted a Columbia-Suicide Severity Rating Scale (C-SSRS) assessment on Martinez, marked that he denied having suicidal ideations, and discontinued his suicide watch and violent-cell restriction. *See id.* ¶¶ 13, 16, 31–32, 37. However, Wellpath employees allegedly had a practice and custom of incorrectly conducting the C-SSRS so they could find that the patient did not have suicidal ideations. *Id.* ¶¶ 33–40. That same day, Martinez self-harmed by stabbing himself in the head with a spork and ingesting two cups of cleaning solution. *Id.* ¶¶ 44–45. Security staff placed him back on suicide watch, issued him a suicide-prevention gown, and placed him on 15-minute observations. *Id.* ¶¶ 43, 46. Two days later, Hastey conducted another C-SSRS assessment, marked that Martinez denied having suicidal ideations, and discontinued his suicide watch and violent-cell restriction. *Id.* ¶¶ 47–48, 53.

This cycle of events repeated multiple times throughout Martinez's detention. Martinez would harm himself or make self-harming statements, security staff would place him on suicide watch, and Wellpath employees would later remove the restrictions. On February 1, Martinez stabbed himself in the head with a pencil until he was bleeding. *Id.* ¶ 64. On February 10, Martinez stated "he felt like he needed to stab himself in the head and was tired of everything." *Id.* ¶ 78. On February 18, he stabbed himself in the head and

– 3 –

arm until he was bloody. *Id.* ¶¶ 91–92. The next day, he also "put in a request for mental health services" to speak with mental-health staff about medications. *Id.* ¶ 94. On March 28, Martinez put in another request for mental health services to speak with a Wellpath employee about medications. *Id.* ¶¶ 135–36. On April 16, Martinez made self-harming statements and began hitting his head on the cell door window. *Id.* ¶¶ 143–46. On May 2, Martinez began striking his head on a brick wall. *Id.* ¶ 173. On May 6, he swallowed a bottle cap and choked, and he later made statements that he would get security officers to kill him. *Id.* ¶¶ 193, 199–200, 215. Martinez swallowed another bottle cap on May 10. *Id.* ¶ 248. And on May 23, he swallowed a spork, stated "I'm trying to kill myself," and had to be transported to the emergency room at a hospital. *Id.* ¶¶ 263–66.

After each self-harming act or statement indicating a risk of self-harm or suicide, security staff placed Martinez on suicide watch. *See id.* ¶¶ 64–65, 78–79, 91–93, 143–46, 173–74, 203. For several of these suicide watches, security staff moved Martinez into a violent cell. *See id.* ¶¶ 143–46, 173–75, 203. After Martinez swallowed the spork, a lieutenant at the jail "put in place security measures stating that [Martinez] was 'allowed only a mattress, towel, mattress cover and bible'" and was allowed "NO eating utencil [sic]." *Id.* ¶ 274. However, each time, the complaint alleges that Wellpath mental-health employees Kimm Hastey or Gemma Volpato incorrectly conducted the C-SSRS assessment, marked that Martinez denied having suicidal ideations, and discontinued his suicide watch and any violent-cell restrictions a few days later. *See id.* ¶¶ 66, 71, 80, 85, 124, 129, 158, 163, 175, 180, 217, 222. They often did so despite noting risk factors for suicide. *See id.* ¶¶ 41, 57–59, 76, 80, 133, 184–85, 226–29. Wellpath medical staff and mental-health staff also noted on several occasions that Martinez was not taking one of his medications, and they

observed multiple signs of depression in Martinez. *Id.* ¶¶ 140–42, 150, 154, 172, 277–78. However, Martinez was never transferred to a mental-health facility or hospital to receive an elevated level of mental health care and treatment. *Id.* ¶¶ 437–38.

In addition, Wellpath and the County allegedly had a policy that trained and licensed mental-health personnel were not at the jail after hours or on weekends. *Id.* ¶ 100. Thus, on weekends, suicide-watch checks were performed by Wellpath employees who were not trained or licensed in providing mental health care, rather than by mental-health personnel like Hastey or Volpato. *Id.* ¶¶ 97–103, 147–49, 151–53, 300–03. The form used by one such employee for a weekend suicide-watch check states, "This form is used for after-hours/weekend checks by Nursing when Mental Health is not on site." *Id.* ¶ 98. In addition, on several occasions after Martinez was discharged from suicide watch, follow-ups with mental-health personnel were delayed because the originally scheduled date fell on a weekend. *Id.* ¶¶ 233–52, 382–84.

On June 4, Martinez told security officers over the intercom in his cell, "I am feeling suicidal and I want to hurt myself." *Id.* ¶ 283. He also banged his head on the door. *Id.* ¶¶ 286–87. Over the weekend of June 5 and 6, Martinez exhibited signs of serious mental-health decline and a serious risk of suicide, but no mental-health professionals were at the jail to observe them. *Id.* ¶¶ 297–303. On June 9, Martinez stated that he had intentions of harming himself, heard voices telling him to harm himself, and was going to bang his head on the walls. *Id.* ¶¶ 317–19. And on June 10, Martinez tied a piece of torn blanket around his neck. *Id.* ¶ 340. Security staff placed Martinez on suicide watch and in an observation cell or cell in the booking area after each self-harming act or statement. *See id.* ¶¶ 283–84, 317–21, 340. However, Volpato continued incorrectly conducting the

C-SSRS assessment, indicating that Martinez denied having suicidal ideations, and discontinuing the suicide watch and violent-cell or observation-cell restrictions, despite noting risk factors. *See id.* ¶¶ 304, 309, 313–15, 321, 326, 330, 345–46, 348, 353, 358–63. When he was discharged from suicide watch on June 14, mental-health staff noted that Martinez had reported "anxiety & depression and au/vh [auditory and visual hallucinations] telling him to hang himself and hurt himself bad." *Id.* ¶ 368 (alteration in original) (emphasis omitted). The next day, Martinez was still experiencing hallucinations and complained about his inability to sleep. *Id.* ¶¶ 375–77.

On June 16, Martinez pressed the intercom button and stated, "I can't do it anymore, I'm feeling suicidal." *Id.* ¶ 385. He was placed on suicide watch in a violent cell. *Id.* ¶ 387. Volpato arrived at the cell to speak with him, and she noted that he "admitted to active suicide ideations" and "scaled a 9 on intent with 1 being he's not going to harm himself and 10 being he's going to kill himself today." *Id.* ¶¶ 386, 388 (emphasis omitted). However, the next day, June 17, Volpato met with Martinez again and discontinued his suicide watch and violent-cell restriction after incorrectly conducting the C-SSRS assessment. *Id.* ¶¶ 392, 397–99. Volpato indicated that Martinez's mood was depressed, his affect blunted, and his behavior withdrawn, and that he had risk factors of "[h]opelessness [and] feeling[s] of guilt or worthlessness." *Id.* ¶ 401. However, she also indicated that he had "[n]o suicidal ideation," the date of his last self-harming incident was "unknown," he had "no plan reported," and "scaled 2 on intent." *Id.* (emphasis omitted). She also noted that Martinez was refused medical housing. *Id.* ¶ 402.

June 17 was a Thursday and, per Wellpath and County policy, no mental-health professionals would be at the jail over the weekend, on June 19 or June 20. *Id.* ¶¶ 408–09.

Martinez "was moved from the violent cell he had been in on suicide watch" to a cell with a shower head sticking out from the wall near the ceiling and was provided a blanket that could easily be torn into strips. *Id.* ¶¶ 410–12. Two days later, on June 19, 2021, Martinez committed suicide by tearing the blanket into strips, tying them to the shower head, and hanging himself. *Id.* ¶¶ 413–14.

### B. Procedural Background

Leonora Rangel, the decedent's mother, filed suit on June 17, 2023, "individually and on behalf of the [e]state of T[ony] M[artinez]." Dkt. No. 1 at 2; *see also id.* ¶ 601. Although the complaint did not specifically allege whether she is bringing the estate's claims as a personal representative of the estate or as an heir, she identified herself as "the surviving mother of Tony Martinez." Dkt. No. 1 ¶ 1. She originally sought to recover damages under wrongful-death and survival-action theories, asserting Section 1983 claims against Wellpath, Volpato, Hastey, and the County, and pursuing ADA claims against only the County. *See id.* ¶¶ 439–606. The County moved to dismiss all claims, asserting that the plaintiff had failed to state a claim under either Section 1983 or the ADA. Dkt. No. 7.

On March 18, 2024, the Court dismissed all claims—including the wrongful death and survival actions—brought pursuant to Section 1983 and all but one ADA claim brought against the County. Dkt. No. 24. The only claim that survived was an ADA claim against the County alleging denial of medical housing. *See id.* at 1, 32–35. However, the Court granted the plaintiff leave to amend her complaint to attempt to cure the pleading deficiencies. *Id.* at 37.

The plaintiff filed an amended complaint on April 1, 2024. Dkt. No. 25. In the amended complaint, the plaintiff added: (1) one paragraph to her ADA claim that states

"Lubbock County failed to accommodate [Martinez] by instead housing him in a cell with ligatures and access to tie off points," Dkt. No. 25 ¶ 571; and (2) ADA-related allegations to the wrongful death and survival actions, *id.* ¶¶ 601–19, 623–24, 627–45.  Otherwise, the complaints are identical.  *Compare* Dkt. No. 1, *with* Dkt. No. 25; *see also* Dkt. No. 49.  Specifically, in the live complaint, the plaintiff alleges the following claims: (1) a Section 1983 claim against Volpato and Hastey for failure to protect Martinez from suicide while he was a detainee, Dkt. No. 25 ¶¶ 439–64; (2) a Section 1983 claim against Hastey for failure to supervise Volpato, *id.* ¶¶ 465–76; (3) a *Monell* episodic-acts-and-omissions claim against Wellpath, *id.* ¶¶ 477–559; (4) a *Monell* conditions-of-confinement claim against the County, *id.*; (5) a claim that Wellpath is vicariously liable for the actions of Volpato and Hastey under the doctrine of respondeat superior, *id.* ¶¶ 560–64; (6) an ADA claim against the County for failure to provide medical and mental health care, *id.* ¶¶ 565–87; (7) an ADA claim against the County for denial of medical housing, *id.*; and (7) wrongful-death and survival-action claims against all defendants, *id.* ¶¶ 587[6]–646.[7]

## C.    Pending Motions to Dismiss

On April 15, 2024, the County filed two motions to dismiss the first amended complaint.  Dkt. Nos. 28; 29.  First, the County seeks dismissal pursuant to Federal Rule of Civil Procedure 12(b)(1) of all claims brought on behalf of the estate against the County, asserting that the plaintiff is a convicted felon and lacks standing and the capacity to sue on

---

[6] The plaintiff appears to have inadvertently numbered two paragraphs as 587.  *See* Dkt. No. 25 at 84.

[7] The County also addressed an ADA failure-to-accommodate claim in its pending 12(b)(6) motion to dismiss.  Dkt. No. 29 at 15–18.  However, the plaintiff responded that she did not assert a new ADA claim for failure to accommodate.  Dkt. No. 43 at 12.  Accordingly, the Court does not address an ADA failure-to-accommodate claim.

behalf of the estate. *See* Dkt. No. 28.[8]  On June 6, 2024, the plaintiff applied in Texas state court for an attorney, Keith Morris, to be appointed as the estate's personal representative. Dkt. No. 45.  The parties dispute whether the current plaintiff can properly bring claims on behalf of the estate and, if not, whether Morris can be substituted as the proper plaintiff—if and when he is appointed—even though the statute of limitations has run. *See generally* Dkt. Nos. 28; 44; 47.

The County also filed a second motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  Dkt. No. 29.[9]  The County seeks dismissal of all claims against it—those brought individually by the heirs and those brought on behalf of the estate.  Dkt. No. 29.  Because the plaintiff has not altered any of the factual allegations or bases for her Section 1983 and ADA denial-of-medical-or-mental-health-care claims, the County seeks dismissal of these claims for the same reasons the Court previously dismissed them.  Dkt. No. 29 at 9–13.  Additionally, the County alleges that the plaintiff has not stated a denial-of-medical-housing claim because the allegations are, at most, a claim for medical malpractice and not actionable under the ADA.  *Id.* at 13–15.  Finally, the County asserts that the wrongful-death and survival-action claims are time-barred.  *Id.* at 15–18.  Both motions to dismiss are now ripe for review.

**2.    12(b)(6) Motion to Dismiss Legal Standard**

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter which, when taken as true, states 'a claim to relief that is plausible on its face.'"  *Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of Ga., Inc.*, 892 F.3d

---

[8] The remaining defendants joined the motion.  Dkt. No. 30.  The plaintiff responded, Dkt. No. 44, and the County replied, Dkt. No. 47.

[9] The plaintiff responded, Dkt. No. 43, and the County replied, Dkt. No. 46.

719, 726 (5th Cir. 2018) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In other words, the plaintiff must plead facts "that allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). If a complaint pleads facts that are "'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In resolving a motion to dismiss, a court must "accept all well-pleaded facts as true and view those facts in the light most favorable to the plaintiff." *Richardson v. Axion Logistics, L.L.C.*, 780 F.3d 304, 306 (5th Cir. 2015) (cleaned up) (quoting *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 461 (5th Cir. 2010)). But a court should not "accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (quoting *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" for purposes of stating a plausible claim to relief. *Iqbal*, 556 U.S. at 678. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.

In considering a Rule 12(b)(6) motion, "a district court must limit itself to the contents of the pleadings, including attachments thereto." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). If a court is presented with and does not exclude matters outside the pleadings, it must convert the motion to a motion for summary

judgment under Rule 56.  Fed. R. Civ. P. 12(d).  However, a district court may consider certain information outside of the pleadings without converting the motion "if that evidence is either (a) a document attached to the Rule 12(b)(6) motion, referred to in the complaint, and central to the plaintiff's claim; or (b) a matter subject to judicial notice under Federal Rule of Evidence 201."  *George v. SI Grp., Inc.*, 36 F.4th 611, 619 (5th Cir. 2022).

**3.    Analysis**

First, the Court denies the defendants' Rule 12(b)(1) motion to dismiss and stays the case for 21 days to allow for the possible substitution of a duly appointed administrator of the decedent's estate as the proper plaintiff.  If at the expiration of 21 days the plaintiff has not sought substitution of a plaintiff with the capacity to sue on behalf of Martinez's estate, all claims brought on behalf of the estate will be dismissed with prejudice.  Additionally, the Court grants the County's Rule 12(b)(6) motion to dismiss as to all claims except the ADA claim for denial of medical housing against the County.

**A.    Motion to Dismiss for Lack of Capacity to Sue**

The Court denies the defendants' Rule 12(b)(1) motion to dismiss.  Dkt. No. 28. Although the plaintiff lacks and cannot attain the requisite capacity to bring claims on behalf of the estate, the estate had standing to sue at the time of filing and, thus, the Court has jurisdiction over those claims.  With respect to the defect in capacity, the Court stays the case for 21 days to allow the plaintiff an opportunity to substitute a proper plaintiff. Although the statute of limitations has run on all claims, Federal Rules of Civil Procedure 15 and 17 allow the plaintiff a reasonable time to substitute a plaintiff with the capacity to sue and relate the substitution back to the original date of filing.

### i. The Court treats the motion as one filed pursuant to Federal Rule of Civil Procedure 12(b)(6) asserting lack of capacity.

The parties first dispute whether the plaintiff has standing to bring Section 1983 and ADA claims under wrongful-death and survival-action theories of recovery. Standing to sue under Article III is a threshold question of "whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). The Fifth Circuit has made clear that "whether the claimant is authorized to prosecute the claim on behalf of the actual owner . . . is a waivable capacity problem, not a jurisdictional standing problem." *Rideau v. Keller Indep. Sch. Dist.*, 819 F.3d 155, 160, 163 n.7 (5th Cir. 2016) (quoting William V. Dorsaneo, III, *The Enigma of Standing Doctrine in Texas Courts*, 28 Rev. Litig. 35, 65 (2008)). "The issue of standing focuses on whether a party has a sufficient relationship with the lawsuit so as to have a justiciable interest in its outcome, whereas the issue of capacity is conceived of as a procedural issue dealing with the personal qualifications of a party to litigate." *Stanissis v. DynCorp Int'l LLC*, No. 3:14-CV-2736-D, 2017 WL 3279148, at *5 (N.D. Tex. Aug. 2, 2017) (internal quotation marks omitted) (quoting *Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 848 (Tex. 2005)).

The parties discuss both standing and capacity. *See generally* Dkt. Nos. 28; 44. And the defendant seeks dismissal based on the plaintiff's alleged lack of standing and, thus, asserts that the Court lacks subject-matter jurisdiction. *See generally* Dkt. No. 28. However, "[c]ourts have recognized that, where the individual bringing suit on behalf of the estate is not the estate's representative, the question is one of capacity; the estate plainly has standing." *Martone v. Livingston*, No. 4:13-CV-3369, 2015 WL 9259089, at *2 (S.D. Tex. Dec. 18, 2015) (first citing *Lovato*, 171 S.W.3d at 848–50; and then *Pluet v. Frasier*, 355 F.3d

381, 383 (5th Cir. 2004)).  Because the issue is not whether the estate has a justiciable interest in the outcome of the litigation but whether the plaintiff is qualified to litigate claims brought on behalf of the estate, the current issue is one of capacity—not standing.  *See Rideau*, 819 F.3d at 160, 163 & n.7.

Notably, the Fifth Circuit also stated in *Rideau* that "questions of standing [are] properly raised in a Rule 12(b)(1) motion [and] questions about capacity . . . are . . . better suited for a Rule 12(b)(6) motion."  819 F.3d at 160.  Although the defendants seek dismissal under Rule 12(b)(1), because the issue here is only one of capacity, the Court can treat it as a Rule 12(b)(6) motion and consider any information outside of the pleadings subject to judicial notice.  *See, e.g., Oden Metro Turfing, Inc. v. Cont'l Cas. Co.*, No. 12-1547, 2012 WL 5423704, at *2 (W.D. La. Oct. 10, 2012) (citing Fed. R. Civ. P. 10(c)), *report and recommendation adopted by* 2012 WL 5424616 (Nov. 1, 2012).  Accordingly, the Court treats the Rule 12(b)(1) motion (Dkt. No. 28) as a motion to dismiss for lack of capacity filed pursuant to Rule 12(b)(6).

### ii.    The Court, at this time, denies the motion to dismiss for lack of capacity, but it will dismiss with prejudice the estate's claims if the defect in capacity is not cured within 21 days.

Federal Rule of Civil Procedure 17 dictates that the legal capacity for an individual who seeks to sue as a representative for another person is governed by the state where the court is located—in this case, Texas.  Fed. R. Civ. P. 17(b)(1), (3).  The Texas Survival Statute states that "[a] personal injury action survives to and in favor of the heirs, legal representatives, and estate of the injured person."  Tex. Civ. Prac. & Rem. Code § 71.021(b).  With respect to claims brought on behalf of an estate, the general rule in Texas is that "only the estate's personal representative has the capacity to bring a survival claim."

*Lovato*, 171 S.W.3d at 850.  However, heirs may file suit "if they allege and prove that there is no administration pending and none [is] necessary."  *Id.* (alteration in original) (quoting *Shepherd v. Ledford*, 962 S.W.2d 28, 31–32 (Tex. 1998)).  Additionally, an heir may maintain a survival action only if she is the sole beneficiary of the decedent's estate.  *Rodgers v. Lancaster Police & Fire Dept.*, 819 F.3d 205, 212 (5th Cir. 2016).

Under Texas law, "the administration [of an estate] is necessary to receive or recover funds or other property due the estate."  Tex. Est. Code § 306.002(c)(3).  In the current suit, the parties agree that administration of the estate is necessary to allow prosecution of this lawsuit and distribution of any funds recovered therefrom.[10]  *See* Dkt. Nos. 28 at 6 & n.2; 45 at 2.  And the plaintiff has not alleged or shown that she is the decedent's sole heir.  *See* Dkt. No. 25 ¶¶ 1–7.  In fact, the defendants contend that she is not the sole heir.  Dkt. No. 28 at 6 n.2.  Accordingly, in this case, only the decedent's estate's personal representative can pursue claims on behalf of the estate.  *See Lovato*, 171 S.W.3d at 850–51.

Nevertheless, "[t]he claim of an heir, who is not a 'personal representative' under the Texas Estates Code at the time of filing but later acquires that capacity and amends the pleadings to reflect that status, will relate back to original filing for limitations purposes."  *Turk v. Mangum*, 268 F. Supp. 3d 928, 935 (S.D. Tex. 2017) (first citing *Lovato*, 171 S.W.3d at 851–53; and then *Pluet*, 355 F.3d at 385 n.3).  In this suit, however, the defendant argues

---

[10] Despite the parties' agreement that administration is necessary, at least one court disagrees with this interpretation of Texas law.  *See Pratho v. Zapata*, 157 S.W.3d 832, 840–43 (Tex. App.—Fort Worth 2005, no pet.).  The court in *Pratho* found that administration was not necessary until recovery from a lawsuit was actually awarded and, thus, an heir suing on behalf of an estate can allege that no administration is pending or necessary even with a pending survival action.  *See id.* Even so, because the plaintiff does not allege that she is the sole heir—and the defendants suggest otherwise—it is immaterial whether the plaintiff meets the necessity-of-administration prong of the test for capacity.

that the plaintiff, as a convicted felon, is barred by statute from ever attaining capacity. Dkt. No. 28 at 6–7; *see also* Tex. Est. Code § 304.003. Accordingly, the plaintiff seeks to substitute a new non-heir plaintiff, Morris, if and when he is appointed the personal representative of the decedent's estate. Dkt. No. 44 at 7–12.

What is more, although the parties appear to agree that the statute of limitations ran on June 19, 2023, two years following the decedent's death, *see* Dkt. Nos. 29 at 20; 43 at 13, the Court finds that it did not run until June 19, 2024. Because there is no federal statute of limitations governing the plaintiff's Section 1983 and ADA claims, the Court looks to the personal-injury statute of limitations of the forum state—in Texas, two years. *See Brockman v. Tex. Dept. of Crim. Just.*, 397 F. App'x 18, 21 (5th Cir. 2010); *see also* Tex. Civ. Prac. & Rem. Code § 16.003(a). Additionally, in civil rights actions, the Court looks to state law for any relevant tolling provisions. *See Hernandez v. Smith*, 793 F. App'x 261, 263 (5th Cir. 2019). Texas law provides that "[t]he death of a person . . . in whose favor there may be a cause of action suspends the running of an applicable statute of limitations for 12 months after the death." Tex. Civ. Prac. & Rem. Code § 16.062(a).

In short, the plaintiff's first amended complaint—where she first states that she will seek to substitute the estate's personal representative, if appointed—was filed within the applicable statute of limitations. The decedent passed away on June 19, 2021. Dkt. No. 25 ¶¶ 413–14. A cause of action accrues under federal law "the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured." *Frame v. City of Arlington*, 657 F.3d 215, 238 (5th Cir. 2011) (quoting *Walker v. Epps*, 550 F.3d 407, 414 (5th Cir. 2008)); *see also Wallace v. Kato*, 549 U.S. 384, 388 (2007) (stating that the accrual date for a Section 1983 claim is governed by federal law). Thus,

any cause of action in favor of the decedent would have accrued, at the latest, on the date of his death—June 19, 2021. And the applicable two-year statute of limitations on any survival action was suspended by an additional year by virtue of the decedent's death. *See* Tex. Civ. Prac. & Rem. Code § 16.062(a); *see also Sowell v. Dresser Indus., Inc.*, 866 S.W.2d 803, 807 (Tex. App.—Beaumont 1993, writ denied) ("[T]his possible twelve[-]month extension . . . applies to survival actions under the survival statute."). Thus, the statute of limitations on any survival action ran on June 19, 2024, three years after the decedent's death.

The suit was timely filed on June 17, 2023, and the amended complaint was filed on April 1, 2024, making the survival action timely. At this juncture, however, although there is a pending application to appoint an administrator for Martinez's estate, no one currently has the capacity to sue on behalf of the estate. And although the plaintiff intends to seek substitution if a representative is appointed, Dkt. No. 44 at 12, any such motion to amend or substitute will be outside of the statute of limitations that expired, at the latest, on June 19, 2024.

Thus, taking all of this into account, the Court is presented with the following questions: (1) whether the current plaintiff has the capacity to bring the survival action; and (2) if not, whether it is proper to substitute a non-heir plaintiff appointed as personal representative of the estate who gains the capacity to sue after the statute of limitations has run when the original heir-plaintiff never had the capacity to sue.

### a. The Court finds that the plaintiff lacks the capacity to bring claims on behalf of the estate.

The defendants assert that, because the plaintiff has felony convictions, the Texas Estates Code prohibits her from ever serving as the personal representative of the decedent's

estate. Dkt. No. 28 at 6–7. The plaintiff does not dispute these convictions or assert that she has the capacity to bring the Section 1983 claims. Instead, she argues that: (1) Texas law does not govern whether the plaintiff can bring ADA claims on behalf of the estate, Dkt. No. 44 at 5–7; and (2) if the plaintiff does lack the capacity to bring certain claims, the Court should allow substitution of Morris as the plaintiff if the pending application to appoint Morris as administrator is granted, Dkt. No. 44 at 7–12.[11]

First, the Court finds that the plaintiff cannot be appointed the personal representative of the estate and, thus, lacks the capacity to bring a survival action. Texas law prohibits a convicted felon from serving as executor or administrator of an estate. Tex. Est. Code § 304.003(b)(2). Moreover, this Court can take judicial notice of "certain facts evident from [the plaintiff's] state court record of conviction, which . . . is a source whose accuracy cannot reasonably be doubted." *United States v. Huntsberry*, 956 F.3d 270, 285 (5th Cir. 2020); *see also* Fed. R. Evid. 201(b). And the Court can rely on these judicially noticed facts when determining capacity to sue. *See Oden Metro Turfing, Inc.*, 2012 WL 5423704, at *2.

The defendant submitted state-court records evidencing the plaintiff's conviction for two different felonies, *see* Dkt. No. 28 at 11–12, 14–15, and the plaintiff does not contest the accuracy of these records. Accordingly, the Court takes judicial notice of these convictions and finds that the plaintiff is disqualified from serving as the administrator of the decedent's estate. *See* Tex. Est. Code § 304.003(b)(2). Furthermore, because the parties agree that the administration of the estate is necessary and the plaintiff has not alleged or shown that she is

---

[11] At this time, the plaintiff's application to appoint Morris as the personal administrator for the decedent's estate is pending in the County Court at Law, Lubbock County, Texas. *See* Dkt. No. 45.

the sole heir of the estate, she does not have the capacity to sue as an heir.  *See Rodgers*, 819 F.3d at 212; *Lovato*, 171 S.W.3d at 850–51.  Thus, the plaintiff does not have the capacity to bring claims on behalf of the estate.

Additionally, the Court finds that the Texas wrongful-death and survival statutes apply when determining who has the capacity to bring an ADA claim.  The Fifth Circuit has found that 42 U.S.C. § 1988 guides whether a party has standing to assert wrongful-death and survival-action theories of recovery for civil rights claims brought pursuant to 42 U.S.C. § 1983.  *Pluet*, 355 F.3d at 383.  That is, because Section 1988 requires the Court to use state common law to "fill the gaps in administration of civil rights suits, . . . a party must have standing under the state wrongful-death or survival statutes to bring a claim under 42 U.S.C. § 1983."  *Id.* (cleaned up).

Whether a party must have standing under the Texas wrongful-death and survival statutes to bring ADA claims on behalf of a deceased individual's estate is less clear.  The Fifth Circuit has not definitively ruled on this issue, and district courts in the Fifth Circuit have reached varying conclusions.  For example, one court found that the language of the ADA and the Rehabilitation Act (RA) contains "broad standing provisions," and it consequently found that Section 1988 and the Texas wrongful-death and survival statutes do not apply to ADA claims.  *McCoy v. Tex. Dep't of Crim. Just.*, No. C-05-370, 2006 WL 2331055, at *6 (S.D. Tex. Aug. 9, 2006).  Conversely, another court found that Section 1988 applies, and a party may only bring an ADA claim on behalf of a deceased individual if the party has standing under the Texas survival statute.  *Pickens v. City of Austin*, No. A-04-CA-340-LY, 2005 WL 8157348, at *7 (W.D. Tex. Mar. 21, 2005).  The plaintiff asks the Court to employ the reasoning in *McCoy* and find that "any person" has standing to

sue under the ADA.  Dkt. No. 44 at 7.  However, as discussed *supra*, Analysis § 3.A.i, who may bring suit on behalf of the estate is not an issue of standing, but of capacity.  And Federal Rule of Civil Procedure 17(b)(3) expressly requires the Court to apply the law of the forum state—Texas—to determine who has the capacity to sue.

Pursuant to Rule 17, courts in the Fifth Circuit have looked to the Texas Estates Code to determine the capacity of an individual to bring suit on behalf of an estate.  In *Rideau*, the Fifth Circuit relied on Rule 17 and the Texas Estates Code in finding that, if a minor has a legally appointed guardian over his or her estate, only the appointed representative has the capacity to file suit.  819 F.3d at 163–65.  And in *Smith v. Harris County*, No. CV H-15-2226, 2016 WL 11917808 (S.D. Tex. June 10, 2016), the court found that ADA claims brought on behalf of an estate were subject to the capacity constraints in Texas law.  *Id.* at *3.  Notably, the district court found that the estate had standing to bring ADA claims, but only the estate's representative had the capacity to bring such claims under Federal Rule of Civil Procedure 17(b)(3) and the relevant Texas law.  *Id.*

Likewise, this Court finds that, like the Section 1983 claims, only the decedent's estate's personal representative has the capacity to bring the estate's ADA claims.  Texas law is clear that "only the estate's personal representative has the capacity to bring a survival claim."  *Lovato*, 171 S.W.3d at 850.  The ADA's broad standing provision does not abrogate these capacity requirements with respect to any ADA claims that survive the decedent's death.  And the plaintiff has not proffered any authority that dictates otherwise, as *McCoy* discusses only standing (not capacity) to sue under the ADA.  *See McCoy*, 2006 WL 2331055, at *5–6.

Therefore, because Texas law requires all claims brought on behalf of Martinez's estate to be brought by the estate's representative and the plaintiff is disqualified from serving in this role, the Court finds that the plaintiff lacks the capacity to bring claims on behalf of the estate.

> **b.    The Court denies the motion and stays the case to allow the plaintiff an opportunity to cure the defect in capacity.**

The plaintiff next requests that the Court allow Morris to be substituted as the plaintiff if and when his state-court application to become the independent administrator of the decedent's estate is granted.  The defendants respond that the Court should not allow the substitution because the plaintiff delayed in seeking appointment of an administrator from the decedent's death in 2021 until June 2024, and because, currently, the estate does not have (and has never had) a representative who can properly assert claims.  Dkt. No. 47 at 6–7.

Because the estate had standing at the time of filing and the defect is one of procedural capacity, the Court, pursuant to Federal Rule of Civil Procedure 17, stays the case for 21 days to allow the plaintiff an opportunity to cure the defect.  Within this time period, the plaintiff must procure appointment of Morris as the administrator for the decedent's estate and then seek leave to amend the complaint to substitute Morris as the proper plaintiff and real party in interest.  If Morris is appointed as administrator and the plaintiff seeks leave to amend to substitute Morris as the plaintiff within 21 days, under Federal Rule of Civil Procedure 15, the date of substitution of the new plaintiff will relate back to the original date of filing.  Alternatively, if the plaintiff does not secure appointment of an independent administrator and seek substitution within 21 days, the Court will dismiss all claims brought on behalf of the estate with prejudice.

### 1. Fifth Circuit and Texas courts disagree as to whether the post-limitations substitution of a new real party in interest can relate back to the original date of filing.

"An action must be prosecuted in the name of the real party in interest." Fed. R. Civ. P. 17(a)(1). Additionally, Rule 17 dictates that "[t]he court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action." *Id.* (a)(3).

Whether a party can cure capacity to add the real party in interest after the statute of limitations has run by relating the substitution back to the original date of filing generally depends on two factors: (1) whether the original plaintiff lacked only the capacity to sue or, more problematically, standing to sue; and (2) whether, post-limitations, the original plaintiff acquired capacity or is seeking to substitute a wholly new plaintiff. Given the issue's novelty, the Court details the relevant case law below. In sum, the Fifth Circuit and the Texas Supreme Court have not definitively ruled on whether, post-limitations, a different plaintiff may be timely substituted in place of the original plaintiff under the relation-back doctrine to cure a defect in capacity. Courts agree that a post-limitations amendment curing capacity is allowed if the estate had standing to sue at the time its original claims were filed and the original plaintiff acquires capacity. In cases like this one, however, where the estate had standing at the time of filing but the original plaintiff lacks the capacity to sue on behalf of the estate, courts differ on whether a post-limitations substitution of a wholly new real party in interest is allowed.

*Fifth Circuit Cases.* The Fifth Circuit has affirmatively "allowed relation back of amendments that change the capacity in which the [original] plaintiff brings suit." *Flores v. Cameron Cnty.*, 92 F.3d 258, 273 (5th Cir. 1996) (collecting cases). But the Fifth Circuit expressly prohibits substitution of a new plaintiff with standing to cure a defect in subject-matter jurisdiction when the original plaintiff lacks standing. *Fed. Recovery Servs., Inc. v. United States*, 72 F.3d 447, 453 (5th Cir. 1995). In *Federal Recovery Services, Inc.*, a corporation attempted to substitute one of its minority shareholders as the plaintiff after limitations had run because the corporation (and original plaintiff) lacked standing to sue at the time of filing. 72 F.3d at 452–53. The Fifth Circuit held that Rule 15 cannot be used to substitute a wholly new plaintiff post-limitations in place of a plaintiff who lacked standing at the time suit was filed; in short, Rule 15 cannot be used to cure jurisdictional defects after the statute of limitations has run. *Id.* at 453.

Prior to *Federal Recovery Services, Inc.*, the Fifth Circuit indicated that a post-limitations substitution would be allowed to cure a standing problem. *See Tidewater Marine Towing, Inc. v. Dow Chem. Co., Inc.*, 689 F.2d 1251, 1253–54 (5th Cir. 1982). The court in *Tidewater* discussed the decedent's common-law spouse's standing to bring a wrongful-death action that, under maritime law, could only be brought by the decedent's legal representative. *Id.* at 1253. Initially, the suit was filed by the decedent's common-law spouse who was not the decedent's legal representative. *Id.* After finding that the district court properly dismissed the claim based on the common-law spouse's lack of standing, the Fifth Circuit noted that such dismissal did not prevent the interested parties from filing an amended claim based on the decedent's wrongful death and substituting a duly appointed legal representative. *Id.* Importantly, the Fifth Circuit noted that the United States Supreme

– 22 –

Court had previously held that "[s]ubstitution of the personal representative in place of the surviving parent is not the commencement of a new suit." *Id.* at 1253–54 (citing *Missouri, K., & T. Ry. Co. v. Wulf*, 226 U.S. 570, 576 (1913)).[12] Thus, the Fifth Circuit stated in dicta that, under Rule 15, the substitution of the personal representative in a new suit would not be time-barred but would relate back to the date of the original complaint. *Id.* at 1254. And, finally, the Fifth Circuit stated that relation-back was appropriate because "[t]here can be no question of notice to the adversary," as the details of the claim were included in the original complaint. *Id.*

Then, the Fifth Circuit reaffirmed in a later, unpublished opinion that a party cannot use Rule 15 to amend a complaint to correct a jurisdictional-standing defect that existed at the time of filing. *Hernandez*, 793 F. App'x at 265–66. In that case, the plaintiff's counsel filed an original complaint, improperly naming the decedent as the plaintiff. *Id.* at 263. After limitations had long expired, the plaintiff's counsel sought to substitute the then-appointed estate representative as the new plaintiff and asserted it was timely based on relation-back to the original filing date. *Id.* at 263, 265. The Fifth Circuit found that, although the decedent's estate had standing to sue at the time of filing, no one purported to bring the estate's claims in the original complaint. *Id.* at 265. And the deceased plaintiff in

---

[12] *Wulf* provides additional insight. The plaintiff in *Wulf* was the spouse and sole heir of the decedent. 226 U.S. at 571. She originally filed in her individual capacity, which was insufficient to assert the estate's claims. *Id.* at 576. In allowing the plaintiff to amend her claim after she was appointed administratrix of the estate to bring the claims as its personal representative, the Supreme Court stated that "[t]he change was in form rather than substance" and allowed this post-limitations amendment. *Id.* Additionally, the Court focused on whether the amendment sought to add a new claim or facts and stated that, because the changing of capacity was not a new action, the statute of limitations did not apply to the amendment. *Id.* And, tellingly, the Court stated that a plaintiff seeking to amend a complaint to change capacity could "join[] or substitut[e] the personal representative," implying that such amendment would not be limited to cases where the original plaintiff is later appointed the estate's personal representative. *Id.*

whose name the suit was brought did not have standing to sue. *Id.* Accordingly, the original plaintiff's lack of standing at the time of filing could not be cured by a post-limitations amendment or substitution. *Id.* at 265–66.

Important here, in *Hernandez*, the Fifth Circuit addressed the language in *Tidewater* that suggested a plaintiff with standing could be substituted for a plaintiff without standing after limitations has expired. *Id.* at 265 n. †. The Fifth Circuit noted that the dicta in *Tidewater* could not overcome *Federal Recovery Services*' later, binding holding that "Rule 15 does not permit a plaintiff [to] amend[ ] its complaint to substitute a new plaintiff in order to cure the lack of subject matter jurisdiction." *Id.* (alteration in original) (quoting *Fed. Recovery Servs., Inc.*, 72 F.3d at 453). Thus, although the Fifth Circuit has not directly addressed or prohibited a post-limitations substitution to cure capacity, such substitution is clearly prohibited if the original plaintiff lacks standing.

***Fifth Circuit District Court Cases.*** Only one district court in the Northern District of Texas has addressed this precise issue. *See Wilbourn v. BRG Sports, Inc.*, 569 F. Supp. 3d 445 (N.D. Tex. 2021) (Pittman, J.). In *Wilbourn*, the decedent's mother filed suit on behalf of the estate. *Id.* at 453. But the decedent had other living heirs, and the plaintiff had a pending application but had not yet been named the personal representative of the estate. *Id.* Although the plaintiff promised to "promptly" complete the administration, the court granted summary judgment on the claims brought on behalf of the estate for lack of capacity because the defect had not been cured at the time the court considered summary judgment. *Id.* Notably, the court stated that dismissal was appropriate because, unlike *Lovato* where the Texas Supreme Court allowed a plaintiff to acquire capacity post-limitations, the defect in capacity in *Wilbourn* was not cured before dismissal. *Id.* However, the court in *Wilbourn*

– 24 –

did not address *Lovato*'s instruction that the appropriate procedure when capacity is challenged is to "abate the case and give the plaintiff a reasonable time to cure any defect." *See Wilbourn*, 569 F. Supp. 3d at 453; *see also Lovato*, 171 S.W.3d at 853 & n.7. Moreover, the court also found dismissal appropriate on the merits, *id.* at 453–55, so curing capacity would have ultimately been futile.

Other federal district courts in Texas considering whether to allow relation-back of the date of substitution of a new plaintiff based their decisions on whether the amendment sought to cure a problem of standing or a problem of capacity. In a factually similar prisoner-suicide civil rights case, *Smith v. Harris County*, an heir of the decedent filed a survival action as "next friend" of the estate, but she did not allege that she was the personal representative of the estate. 2016 WL 11917808, at *3. Like the decedent's estate in this case, the court found that, even though the plaintiff lacked capacity to bring claims on behalf of the decedent's estate, the estate had standing to sue at the time of filing. *Id.* at *2–3. Thus, pursuant to Federal Rule of Civil Procedure 17, the court stayed the survival action brought on behalf of the estate for 21 days "subject to enlargement if additional time [was] necessary to complete proceedings in an appropriate probate court[] to allow for one who is lawfully empowered as personal representative of the [e]state to join or to substitute as the party [p]laintiff." *Id.* at *3.[13] Similarly, in *Lopez v. Sanchez-Navarro*, No. EP-11-CV-102-DB, 2011 WL 13234660 (W.D. Tex. Aug. 31, 2011), the estate of a decedent "sought a survival cause of action on its own behalf." *Id.* at *1. When the

---

[13] The court's language implies that it would have allowed relation-back of the filing date with respect to either the original or a new plaintiff; ultimately, the original plaintiff later acquired the requisite capacity. *Smith v. Harris Cnty.*, No. H-15-2226, 2017 WL 11611472, at *2 (S.D. Tex. Apr. 21, 2017).

defendant contested the estate's capacity to bring suit and sought dismissal, the court, reiterating that "a 'decedent's estate has a justiciable interest in the controversy sufficient to confer standing,'" *id.* at *2 (quoting *Lovato*, 171 S.W.3d at 850), abated the case "until such time as [the plaintiffs] cure the defect in capacity." *Id.* at *3.

In contrast, other courts have declined to apply the relation-back rule even when the owner of the claims had standing to sue at the time of filing if the original plaintiff tried to substitute a wholly new plaintiff after the statute of limitations had run. For example, in *Ramirez ex rel. Ramirez v. Bexar County*, No. SA-10-CV-296, 2011 WL 4565473 (W.D. Tex. Sept. 29, 2011), a decedent's biological father originally filed suit on behalf of the decedent's estate, alleging that he was an heir and personal representative of the estate. *Id.* at *1. The plaintiff's counsel later discovered that the decedent's biological father had terminated his parental rights before the decedent's death and was, therefore, not an heir and disqualified from serving as the estate's personal representative. *Id.* Thus, the plaintiff's counsel filed an application in state court to have the decedent's sister appointed as the estate's personal representative, and he filed a motion in federal court to name the sister as the plaintiff and personal representative of the estate. *Id.* at *2–3. At the time the court considered the parties' motions for summary judgment, the sister had not yet been appointed, and there was no personal representative for the decedent's estate. *Id.* at *3.

In recommending that the district court dismiss the case and not allow substitution, the magistrate judge noted that, "[t]he Supreme Court of Texas has never permitted a third party without capacity to file pre-limitations a lawsuit on behalf of a decedent, and then substitute post-limitations a different third party who also lacks capacity to substitute as plaintiff in hopes of obtaining capacity and curing jurisdiction." *Id.* However, the court in

– 26 –

*Ramirez* appears to conflate standing and capacity, noting that "the error of [the decedent's father's] authorities lies in his reliance on cases in which the plaintiff had standing to sue in the first instance. [The decedent's father] lacked standing because he is neither an heir, legal representative[,] or administrator of [the decedent's] estate." *Id.* This runs contrary to *Lovato*, which holds that the proper inquiry is whether an estate—not the representative plaintiff—has a justiciable interest in a survival action when determining standing. 171 S.W.3d at 850.[14]

    ***Texas Supreme Court Cases.*** Likewise, the Texas Supreme Court has not ruled on this precise issue. But two seminal cases decided the same day instruct when a court should allow a plaintiff to cure a defect in his or her own capacity after the statute of limitations has run.

    First, in *Lovato*, the plaintiff filed a survival action purporting to be the personal representative of her mother's estate. 171 S.W.3d at 847. However, she was not appointed personal representative until after the statute of limitations had expired. *Id.* The Texas Supreme Court first found that "in a survival action, the decedent's estate has a justiciable interest in the controversy sufficient to confer standing." *Id.* at 850. Furthermore, in determining that "[the plaintiff's] post-limitations capacity cure[d] her pre-limitations lack thereof," the Texas Supreme Court noted that it had "previously recognized that the substitution of a personal representative for dependents does not introduce a new or

---

[14] Additionally, though not directly disallowing relation-back of the substitution date of a new plaintiff, another district court noted that the only case that did not allow time to cure involved a case with a plaintiff "seeking to substitute a non-party to the original suit as the [e]state's representative" after limitations had run. *Neal v. City of Hempstead*, No. H-12-1733, 2013 WL 105036, at *4 (S.D. Tex. Jan. 8, 2013) (citing *Ramirez*, 2011 WL 4565473, at *2–3).

different cause of action and that such a substitution will relate back to the time of the original filing of the lawsuit." *Id.* at 852 (citing *Pope v. Kansas City, M. & O. Ry. Co. of Tex.*, 207 S.W. 514, 516 (1918)).

The Texas Supreme Court also stated that "an original petition that alleges the correct capacity should suffice for limitations purposes, provided that capacity, if challenged, is established within a reasonable time." *Id.* at 853. Significantly, the Texas Supreme Court "presume[d] that [the plaintiff] and her attorney filed the petition in good faith." *Id.* The burden is on the defendant to challenge the capacity of a plaintiff and, in the event of such challenge, "the trial court should abate the case and give the plaintiff a reasonable time to cure any defect." *Id.* at 853 n.7; *see also* Fed. R. Civ. P. 17(a)(3).

Likewise, in *Lorentz v. Dunn*, 171 S.W.3d 854 (Tex. 2005), the decedent's sister represented to the court in her complaint that she was the administrator of her sister's estate but did not actually get appointed until after the statute of limitations had expired. The Texas Supreme Court echoed the reasoning in *Lovato* to allow the plaintiff's "late-acquired capacity [to] cure[] her pre-limitations lack thereof." *Id.* at 856.

***Texas Appellate Court Cases.*** Although the Texas Supreme Court has not ruled on the precise issue, similar to federal district courts in the Fifth Circuit, intermediate appellate courts in Texas are not in agreement on whether a plaintiff can cure a defect in capacity by a post-limitations substitution of a wholly new plaintiff. For example, one Texas appellate court distinguished the Fifth Circuit's opinion in *Hernandez* and allowed substitution of a new plaintiff because there was no jurisdictional defect at the time of filing that would prevent application of the relation-back doctrine. *Laguna v. Fountila*, Nos. 13-20-484-CV & 13-20-487-CV, 2022 WL 2838443, at *6 (Tex. App.—Corpus Christi-Edinburg July 21,

– 28 –

2022, no pet.).  In *Laguna*, the original plaintiff brought her own claims and claims "as next friend" of the decedent prior to the decedent's death, and she had standing and capacity to bring those claims at the time of filing.  *Id.* at *1, *6.  After the decedent's death, she lacked the capacity to bring claims on behalf of his estate.  *Id.* at *6.  But because "[t]here [was] no dispute that [the original plaintiff] had the capacity to bring her original claims at the time she brought them," the jurisdictional defect in *Hernandez* was not present.  *Id.* at *6.  Accordingly, the court allowed the substitution of the administrator of the estate after limitations had run to relate back to the original filing date.  *Id.* at *7.

Arriving at the opposite outcome in *Covington v. Sisters of Charity of Incarnate Word*, 179 S.W.3d 583 (Tex. App.—Amarillo 2005, pet. denied), the court did not allow a post-limitations substitution of the estate's personal representative.  The court recognized that the plaintiff in *Covington* sought to add a completely different plaintiff rather than change the capacity of the original plaintiff.  *Id.* at 588.  And the original plaintiff—the decedent's sister—did not identify herself as an heir or representative of the estate in her pleading.  *Id.* at 587.  Additionally, a personal representative was already appointed at the time the decedent's sister filed suit, so "[p]ermitting a suit brought by her to toll limitations until [the personal representative] took action as administrator runs counter to the requirement . . . that such suits be brought by the personal representative when administration is necessary."  *Id.* at 588.  And finally, the court noted that, under ordinary circumstances, an amendment that adds a new party does not relate back to the date of the original pleading.  *Id.* (citing *Alexander v. Turtur & Assocs., Inc.*, 146 S.W.3d 113, 121 (Tex. 2004)).  Importantly, *Covington* noted that the decedent's sister was not an actual heir but a

"stranger to the survival action" and provided no evidence that she was acting as an heir or on behalf of the decedent's heirs. *Id.* at 587–88.

In short, there is no binding precedent that directly addresses the issue and no consensus among the persuasive authority as to whether a post-limitations substitution of a new party with capacity to assert claims on behalf of an estate cures a pre-limitations defect in the capacity of the original plaintiff.

> ### 2.    The Court, at this time, denies the motion to dismiss for lack of capacity and allows the plaintiff a reasonable time to cure.

The Court denies the motion to dismiss and stays the case to give the plaintiff a reasonable time to cure the defect in capacity. It does so because (1) the estate had standing to bring its claims when the original, timely complaint was filed; (2) any substitution of the real party in interest will not affect the notice to the defendants of the claims against them; and (3) federal and Texas law indicate the proper procedure when a plaintiff lacks capacity is a short stay and opportunity to cure. Because, however, the plaintiff delayed seeking appointment of an estate representative for almost three years and this case has been pending for over a year, the Court finds reasonable a short stay of 21 days.

First, like the plaintiff in *Tidewater*, the plaintiff here is not asserting a new cause of action or new facts by seeking to substitute a new party to represent the estate. *See* 689 F.2d at 1253–54. As such, the amendment will not affect the notice to the defendants of the substance of the claims against them. *See id.* at 1254; *see also* Fed. R. Civ. P. 15(c)(1)(B) (generally allowing relation back of amendments only when it arises from the same allegations set out in the original pleading). And this conclusion does not run afoul of *Federal Recovery Services, Inc.*, which only prohibits a post-limitations substitution of a new

plaintiff to cure a defect in standing, which affects subject-matter jurisdiction. *See* 72 F.3d at 453; *see also Hernandez*, 793 F. App'x at 265–66. Here, it is well-established that the plaintiff lacked only the capacity to sue, and "the decedent's estate ha[d at the time of filing] a justiciable interest in the controversy sufficient to confer standing." *Lovato*, 171 S.W.3d at 850.

Moreover, although the statute of limitations has run, the Court allows the plaintiff a short time to cure the defect in capacity by seeking substitution of a new plaintiff. *See Smith*, 2016 WL 11917808, at *2–3; *Lopez*, 2011 WL 13234660, at *3. Like the decedents' estates in *Smith* and *Lopez*, Martinez's estate had standing to sue at the time Rangel brought claims on its behalf. And, like the plaintiff in *Lovato*, Rangel timely asserted claims on behalf of her son's estate in a representative capacity in the original petition and, thus, asserted the claims of a party with standing. *See* Dkt. Nos. 1 ¶ 601; 25 ¶ 622; *see also Lovato*, 171 S.W.3d at 853. Although it is unclear whether Rangel initially attempted to assert claims as an heir or as a personal representative of her son's estate, "the estate had standing and [will] ultimately [be] represented by a person with capacity to pursue the claim on its behalf" in the event the pending state-court application to appoint an independent administrator is approved. *Lovato*, 171 S.W.3d at 853. If it is denied or not timely resolved, the Court will dismiss the claims brought on behalf of the estate for failure to cure the defect in capacity. *See* Fed. R. Civ. P. 17(a)(3).

Additionally, this case is distinguishable from those where the court refused to allow the original plaintiff to substitute a new plaintiff post-limitations. First, unlike Rangel who timely asserted claims on behalf of Martinez's estate, the plaintiff in *Hernandez* failed to assert claims on behalf of the estate prior to the running of the statute of limitations. 793 F.

App'x at 265.  Thus, naming the decedent who lacked standing as the original plaintiff prevented a post-limitations substitution of the estate's personal representative because jurisdictional standing cannot be cured post-limitations.  *Id.*

Next, a full dismissal on the merits is not appropriate at this time, so the plaintiff may still be afforded more time to cure.  In *Wilbourn*, the court did not address whether a stay or abatement was appropriate; instead, it granted summary judgment on the merits and also held that judgment was appropriate because the plaintiff had failed to cure the defect in capacity at the time of dismissal.  569 F. Supp. 3d at 453.  This case is at the motion-to-dismiss stage, and the plaintiff has stated at least one claim on behalf of the estate.  *See infra*, Analysis § 3.B.iii.  Thus, dismissal of all claims on the merits is inappropriate, and the plaintiff has not failed to cure capacity prior to dismissal.  *Cf. Lovato*, 171 S.W.3d at 853 ("[The plaintiff] cured the defect in her capacity before the case was dismissed.").

And finally, Rangel is not a "stranger" to the case.  In *Ramirez*, although the plaintiff sought to appoint and substitute a new party as the plaintiff after limitations had run, the court found it noteworthy that the original plaintiff was the biological father who had his parental rights terminated and, thus, was not a personal representative or an heir at the time of filing.  2011 WL 4565473, at *1.  Thus, the court in *Ramirez* (albeit failing to address whether the estate had standing) dismissed because the plaintiff lacked standing.  *Id.* at *3. And in *Covington*, a Texas appellate court noted that the original non-heir plaintiff did not identify herself as an heir or personal representative in the original pleading and, in fact, was a "stranger" to the case.  179 S.W.3d at 587–88.  In this case, although Rangel is disqualified from serving as the personal representative of the estate due to her felony

convictions, she is the decedent's mother and, based on the plaintiff's allegations, an heir under Texas law. *See* Dkt. No. 25 ¶ 1; Tex. Est. Code §§ 22.015, 201.001(a)–(c). And there is no indication that the plaintiff knew she lacked the capacity to bring these claims or that the petition was not filed in good faith. *Cf. Lovato*, 171 S.W.3d at 853 ("[W]e presume that [the plaintiff] and her attorney filed that petition in good faith.").

In sum: (1) the claims brought on behalf of the estate were timely filed; (2) the estate had standing to sue at the time of filing; (3) the plaintiff, as the surviving parent, was an heir of the decedent and alleged representative capacity at the time of filing; and (4) the defendants had timely notice of all claims, and the possible substitution of the real party in interest does not change the facts or allegations of the claims against the defendants. Accordingly, pursuant to Rule 17(a)(3) and *Lovato*, the Court "abate[s] the case and give[s] the plaintiff a reasonable time to cure any defect." *Lovato*, 171 S.W.3d at 853 n.7.

However, the Court recognizes that the decedent passed away in June 2021 and the application to appoint an administrator was not filed until June 2024, presumably after the defendant alerted the plaintiff to the defect in capacity in its motion to dismiss filed in April 2024. Dkt. Nos. 28; 47 at 6. And there is no indication from the plaintiff as to when such application might be granted. *See generally* Dkt. No. 44. Also, this case has been pending since June 2023. *See* Dkt. No. 1. As the time to cure capacity must be "reasonable" and cannot extend indefinitely, the Court stays the case for only 21 days to allow the plaintiff to attempt to cure the defect in capacity. *See Smith*, 2016 WL 11917808, at *3. In the event the plaintiff does not cure capacity within 21 days, the Court will dismiss with prejudice all claims brought on behalf of the estate.

B.       **Motion to Dismiss for Failure to State a Claim**

Next, the Court grants in part and denies in part the County's pending Rule 12(b)(6) motion to dismiss for failure to state a claim.  Because the plaintiff did not amend her previously dismissed Section 1983 claims, including any *Monell*, conditions-of-confinement, and episodic-acts-or-omissions claims, the Court dismisses these claims and any associated claims for damages under wrongful-death or survival-action theories.  Additionally, the Court dismisses the ADA claims for denial of mental or medical health care because the plaintiff did not adequately plead denial of care by reason of his disability.  However, the Court finds that the plaintiff has adequately pled an ADA claim for denial of medical housing because this claim is both distinct from a medical malpractice claim and timely.

i.       **The Court dismisses the Section 1983 claims because the plaintiff did not make any amendments.**

In its Order partially granting the County's first 12(b)(6) motion to dismiss, the Court dismissed all of the plaintiff's Section 1983 claims against the County and any associated request for damages under wrongful-death or survival-action theories.  Dkt. No. 24 at 11–32, 36–37.  However, the Court allowed the plaintiff 14 days to amend her complaint to cure the pleading deficiencies "[b]ecause of the strong policy in favor of granting leave to amend at least once."  *Id.* at 37–38.

In her first amended complaint, the plaintiff re-urges facts and Section 1983 claims identical to those the Court found deficient in her original complaint.  *Compare* Dkt. No. 1 ¶¶ 8–438, 477–85, 495–559, *with* Dkt. No. 25 ¶¶ 8–438, 477–85, 495–559; *see also* Dkt. No. 24 at 11–32.  The defendant contends, and the plaintiff concedes, that she has made no amendments to these claims or their related factual allegations.  Dkt. Nos. 29 at 9–10; 43 at 7–8; 46 at 3.  Instead, the plaintiff relies on the arguments in her response to the first motion

to dismiss in support of her contention that these claims were sufficiently pled in the original complaint.  Dkt. No. 43 at 7–8; *see also* Dkt. No. 16 at 3–19.

Because the plaintiff has failed to make any attempt to cure the pleading deficiencies in her complaint with respect to these claims and any associated wrongful-death and survival-action claims for damages, the Court dismisses these claims for the same reasons discussed in detail in its prior Order.  *See* Dkt. No. 24 at 11–32, 36–37.  And, because the plaintiff has essentially "advise[d] the [C]ourt that [she is] unwilling or unable to amend in a manner that will avoid dismissal," these claims are dismissed with prejudice.  *See Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002); *cf. Cruz v. CitiMortgage, Inc.*, No. 3:11-CV-2871-L, 2012 WL 1836095, at *7 (N.D. Tex. May 21, 2012) (dismissing claims with prejudice where a plaintiff failed to request leave to amend or respond to a motion to dismiss).

### ii.    The Court finds that the plaintiff has not sufficiently alleged an ADA denial-of-medical-or-mental-health-care claim.

The parties next dispute whether the plaintiff's first amended complaint cures the deficiencies the Court previously found in her ADA claim alleging that the County denied medical and mental health care to the decedent on the basis of his disability.  The Court previously dismissed this claim because, based on the plaintiff's own allegations, "[the decedent] was not denied mental health care on the weekends because of his disability—he was denied care from a mental-health professional on the weekends because no one in the jail received mental health care on the weekends."  Dkt. No. 24 at 35.

The ADA claims in the plaintiff's first amended complaint are identical to the ADA claims in her original complaint except for the addition of one allegation related to medical housing—that "Lubbock County failed to accommodate [Martinez] by instead housing him

in a cell with ligatures and access to tie off points." Dkt. No. 25 ¶ 571; *see also* Dkt. Nos. 1 ¶¶ 565–86; 25 ¶¶ 565–87. Notably, the amended complaint still contains the allegation that the County does not employ mental-health professionals for any inmates after hours and on the weekends. Dkt. No. 25 ¶ 574. Thus, the plaintiff has not amended her complaint to allege facts that could show that the decedent was denied medical or mental health care "by reason of his disability" because all inmates—those with and without qualifying disabilities—did not have access to mental-health professionals after hours or on the weekends. *See id.*; *see also* Dkt. No. 24 at 35; *Smith v. Harris Cnty.*, 956 F.3d 311, 317 (5th Cir. 2020) (quoting *Melton v. Dall. Area Rapid Transit*, 391 F.3d 669, 672 (5th Cir. 2004)) (stating the elements of an ADA claim).

The plaintiff contends that, had the decedent not had a disability associated with his mental health, then he would have had access to proper medical care because the County provides "regular" medical professionals after hours and on the weekends. Dkt. No. 43 at 9. Put another way, because proper medical care could have been available had he needed "regular" medical care rather than the mental health care required to treat his disability, the plaintiff argues that he has properly pled denial of medical care "by reason of his disability." *Smith*, 956 F.3d at 317 (quoting *Melton*, 391 F.3d at 672).

However, this argument misconstrues the applicable legal standard. Courts in the Fifth Circuit have found that a plaintiff cannot prove intentional discrimination on the basis of an inmate's disability when medical care results from a policy applied to both disabled and non-disabled inmates. For example, one court found that a county did not fail to give an inmate PTSD medications or a CPAP machine "by reason of his disability" but instead "because of standard County policy on dispensing medications and CPAP machines."

– 36 –

*Acosta v. Williamson Cnty.*, No. 1:21-CV-615-DII, 2023 WL 5352324, at \*14 (W.D. Tex. Aug. 21, 2023), *report and recommendation adopted by* 2023 WL 6612521 (W.D. Tex. Oct. 10, 2023), *aff'd*, 2024 WL 3833303 (5th Cir. Aug. 15, 2024); *cf. Austin v. City of Pasadena*, 74 F.4th 312, 334 (5th Cir. 2023) (finding that officers' treatment of a detainee during an epileptic seizure was for the detainee's safety and not discrimination because of his disability).  Thus, the fact that the decedent did not have access to mental-health professionals at the time he committed suicide resulted from the County not staffing mental-health professionals for any inmates after hours and on weekends and, thus, is not enough to allege that the decedent was discriminated against "by reason of his disability."  *See Acosta*, 2023 WL 5352324, at \*14 & n.17.  Accordingly, the Court dismisses the plaintiff's ADA claim for denial of medical or mental health care against the County for the same reasons it dismissed such claim in its prior Order.  *See* Dkt. No. 24 at 35.

### iii.    The Court finds that the plaintiff has sufficiently pled an ADA claim for denial of medical housing.

The only claim against the County that survived the defendant's first motion to dismiss for failure to state a claim was an ADA claim for denial of medical housing.  *See id.* at 34–35.  The Court found that the plaintiff's factual allegations with respect to the alleged denial of requested medical housing "give rise to the reasonable inference that the refusal of medical housing occurred around the same time Martinez's mental-health problems were worsening."  *Id.* at 34.  And the plaintiff alleged that such medical housing was denied "because the medical housing unit did not want to be responsible for his self-harm or suicide attempts and that an inmate not exhibiting those behaviors would have been granted a medical housing cell if in need."  *Id.*  Thus, the Court found that the plaintiff sufficiently stated an ADA denial-of-medical-housing claim.  *Id.* at 34–35.  And the plaintiff did not

amend the allegations of this claim other than to add that "Lubbock County failed to accommodate him by instead housing him in a cell with ligatures and access to tie off points." Dkt. No. 25 ¶ 571.

In its pending motion, the County avers that the plaintiff only alleges that the County failed to provide medical housing and, if it had, he would not have committed suicide. *See* Dkt. No. 29 at 13–15. According to the County, the plaintiff's new allegations within the wrongful-death action "plainly accuse[] [the] County of not providing medical and mental health care the [p]laintiff alleges was necessary." Dkt. No. 46 at 7 (citing Dkt. No. 25 ¶¶ 601–19). The County further argues that, under Fifth Circuit precedent, the plaintiff essentially states a claim for medical malpractice, which is not actionable under the ADA. Dkt. No. 29 at 13–15.

The Court disagrees. Instead, the Court finds that the allegations remain sufficient to state a denial-of-medical-housing claim under the ADA, and the County's cited authorities do not show that the plaintiff has alleged only a medical-malpractice claim. In each of the cited cases, the plaintiff alleges only an improper medical decision. That is, the plaintiff in each case either does not allege or does not present evidence to support an allegation that the medical treatment was due to the aggrieved individual's disability.[15]

---

[15] The Court does not find the cases cited by the defendant persuasive because they are all distinguishable, and all but one are non-binding. In *Smith*, the only binding opinion, the Fifth Circuit found an ADA claim ultimately failed because the jail employees "did not intentionally discriminate against" the inmate. 956 F.3d at 319–20. Likewise, in *Wilson v. Baucom*, No. 22-50066, 2023 WL 4288350 (5th Cir. June 30, 2023), the Fifth Circuit noted that a prison does not violate the ADA by "failing to attend to the medical needs of its disabled prisoners." *Id.* at *4 (quoting *Nottingham v. Richardson*, 499 F. App'x 368, 377 (5th Cir. 2012)). However, it also found that the plaintiffs provided no evidence that the treatment of the disabled inmate was "due to his disability." *Id.* Similarly, in *Nottingham*, the Fifth Circuit found that the inmate's ADA claim

Here, Rangel makes the same allegations of disability discrimination in her first amended complaint as she did in her original complaint—that the decedent was denied medical housing because the medical housing unit did not want to be responsible for his self-harming and suicidal behavior, and an inmate not suffering from these mental-health-related symptoms would not have been denied medical housing. *See* Dkt. No. 25 ¶¶ 583–84, 617-18. In short, the contention that the decedent was treated differently because of his disability moves the claim beyond medical malpractice or negligence to a claim of intentional discrimination "by reason of [the decedent's] disability." *Smith*, 956 F.3d at 317 (quoting *Melton*, 391 F.3d at 672).

Therefore, the Court finds that the plaintiff has sufficiently stated an ADA claim based on the denial of medical housing and, with respect to this claim only, denies the County's Rule 12(b)(6) motion to dismiss for failure to state a claim.

---

ultimately failed because "[t]here [was] no indication that he was treated differently because of his disability." 499 F. App'x at 377. And in the cited Seventh Circuit case, the court stated that the inmate had alleged "that he was not given a special accommodation," but that "[n]o discrimination [was] alleged; [the inmate] was not treated worse because he was disabled." *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996).

Furthermore, one federal district court found that "[the inmate] has offered no evidence that the jail discriminated against him *because of* his disabilities." *Reed v. Nacogdoches Cnty.*, No. 9:19-CV-086-ZJH, 2022 WL 705918, at *19 (E.D. Tex. Feb. 3, 2022), *aff'd sub nom. Reed v. Nacogdoches Cnty.*, 2023 WL 3563017 (5th Cir. May 19, 2023) (emphasis in original). And although *Chupka* did not involve an inmate, the Fifth Circuit similarly found that the student-plaintiff did not present facts that would show a school nurse's decision "amounted to intentional discrimination on the basis of a disability." *Chupka ex rel. C.C. v. Pflugerville Indep. Sch. Dist.*, No. 21-50356, 2022 WL 1056101, at *2 (5th Cir. Apr. 8, 2022). Thus, all cases cited by the County lack the critical allegations and/or evidence that the defendant treated the disabled individual differently because of his or her disability. In contrast, those allegations are present here. *See* Dkt. No. 25 ¶¶ 583–84, 617-18.

iv.    **The Court finds that the plaintiff's claims for wrongful-death and survival-action damages under the ADA are not time-barred.**

The plaintiff adds multiple paragraphs to her wrongful-death and survival-action claims in her first amended complaint.  *See* Dkt. No. 25 ¶¶ 589–90, 601–19, 627–45.  And she clarifies in her response that she intends to assert wrongful-death and survival-action claims for damages under the ADA.  Dkt. No. 43 at 13.  The County argues that these theories of recovery were added for the first time in the first amended complaint filed on April 1, 2024, and are barred by the two-year statute of limitations.  Dkt. No. 29 at 20.

The Court finds that any wrongful-death and survival-action theories for damages derivative of the plaintiff's surviving ADA claim against the County are not time-barred.  As the Court stated in its prior Order, Sections 1983 and 1988 incorporate state wrongful-death and survival statutes to provide remedies to certain surviving individuals for damages suffered by the surviving individuals and the decedent as a result of civil rights violations.  *See* Dkt. No. 24 at 36 (citing *De Paz v. Duane*, 858 F. App'x 734, 737–38 (5th Cir. 2021)).  Accordingly, the Court construed the claims as theories for damages under Section 1983 and not independent causes of action.  *See id.*

Although the Fifth Circuit has not expressly relied on Texas wrongful-death and survival statutes to determine whether an ADA claim survives at death, it has indicated that it is proper to look to state common law when determining the survivability of an ADA claim.  In *Rideau*, the Fifth Circuit stated that it "may consider that common law rule in determining who may assert a claim for a minor's compensatory damages under the ADA or Rehabilitation Act, just as other courts have looked to the common law to determine when federal civil rights claims survive the death of the person aggrieved."  819 F.3d at 161;

*cf. Frame*, 657 F.3d at 237 (applying state law personal-injury statute of limitations to an ADA claim).

And at least one district court has, albeit hesitantly, applied Texas law when determining the survivability of an ADA claim. *See Cardella v. CVS Caremark Corp.*, No. 3:08-CV-1656-M, 2010 WL 1141393, at *1 & n.7 (N.D. Tex. Mar. 25, 2010) (Lynn, J.). There, the court noted that the plain language of 42 U.S.C. § 1988—the federal provision on which courts, including the Fifth Circuit, rely to fill the gaps in federal civil rights law with state common law—does not include the ADA among its enumerated list of federal statutes. *See id.* at *1 n.7. But, "[n]evertheless, the [c]ourt applie[d] Fifth Circuit precedent by analyzing the survivability of . . . ADA claims under Texas state law." *Id.*

Thus, case law provides that, like Section 1983 claims, ADA claims, under Texas law, survive death and are asserted under Texas wrongful-death and survival statutes that provide theories of recovery for violation of the ADA. Moreover, both parties agree that the plaintiff is asserting wrongful-death and survival-action theories to recover damages resulting from an alleged civil rights violation and not independent causes of action. Dkt. Nos. 43 at 13; 46 at 9.

The County asserts that the allegations for wrongful-death and survival-action damages derivative of the plaintiff's ADA claim are time-barred under the ADA's two-year statute of limitations. Dkt. Nos. 29 at 20; 46 at 9. But it has provided no compelling authority that persuades the Court to evaluate these theories of damages apart from the ADA claim for limitations purposes. Instead, because the plaintiff does not assert stand-alone wrongful-death or survival claims and, instead, asserts derivative theories of

recovery for the decedent's timely filed ADA claim, the Court declines to dismiss these theories of recovery as time-barred.

In any event, the Court gave the plaintiff leave to amend her complaint to cure pleading deficiencies.  Dkt. No. 24 at 37.  The Fifth Circuit has long held that, under the liberal standard of Federal Rule of Civil Procedure 15(c), "[a]s long as the amended complaint refers to the same transaction or occurrence that formed the basis for the original complaint and the defendant was put on notice of the claim by the first complaint . . . even . . . new theories of recovery will be allowed." *Galvan v. Bexar Cnty.*, 785 F.2d 1298, 1305 (5th Cir. 1986) (quoting *Williams v. United States*, 405 F.2d 234, 236–37 (5th Cir. 1968)).  Because the new allegations in the amended complaint arise out of the same transaction or occurrence and the defendant has not asserted it had no notice, adding the wrongful-death and survival-action theories of recovery as derivative to the ADA claim instead of the Section 1983 claim is permitted under Rule 15(c).

In short, the Court denies the County's Rule 12(b)(6) motion to dismiss with respect to the plaintiff's claims for wrongful-death and survival-action damages under her ADA claim for denial of medical housing.

### 4.    Conclusion

In sum, the Court denies the defendants' Rule 12(b)(1) motion to dismiss (Dkt. No. 28).  When properly evaluated as a motion to dismiss for lack of capacity pursuant to Rule 12(b)(6), the Court finds immediate dismissal unwarranted.  The estate had standing at the time the suit was filed, and the plaintiff should be given a reasonable time to cure the defect in capacity and substitute the correct real party in interest as the plaintiff.  Accordingly, the Court stays the case for 21 days.  But because the plaintiff has had over three years to seek

appointment of a personal representative of the decedent's estate, if the defect in capacity is not cured within 21 days, the Court will dismiss all claims brought on behalf of the estate with prejudice.

Next, the Court denies the County's Rule 12(b)(6) motion to dismiss (Dkt. No. 29) with respect to the plaintiff's claims for wrongful-death and survival-action damages under her ADA claim for denial of medical housing against the County. All other claims are dismissed with prejudice.

Therefore, if the plaintiff seeks to substitute a properly appointed representative of Martinez's estate within the 21-day stay, the estate's ADA claim for denial of medical housing survives against the County. If, however, the plaintiff fails to timely cure the defect in capacity, the Court will dismiss with prejudice all claims brought against all defendants on behalf of Martinez's estate.

So ordered on November 13, 2024.

JAMES WESLEY HENDRIX
UNITED STATES DISTRICT JUDGE